The next case called for oral argument is People v. Davis. Counsel, whenever you're ready, you may proceed. Good afternoon, counsel. Good afternoon. Your Honor, may it please the Court, my name is Christian Burrell. I represent Adrian Davis, the appellant in this case. Mr. Davis was sentenced to 8 years incarceration in the Department of Corrections, pursuant to a negotiated plea. He pled guilty to a Class I felony for aggravating a lawful discharge of a weapon. Following his guilty plea, he filed a motion to withdraw his plea. The basis for the motion to withdraw his plea was that he alleges that he was confused about what he was pleading guilty to and that he wished to withdraw his plea. That was denied by the trial court, and this appeal followed. He argues that it was abuse of discretion for the trial court to deny his motion to withdraw his guilty plea. Mr. Davis, in his motion to withdraw his guilty plea, the motion was heard by the trial court, and at that hearing, he testified that he was confused as to what he was actually pleading guilty to. Now, admittedly, the transcript of that hearing, he says contradictory things. He's not exactly clear one way or the other. He says on page 31 of the transcript that he thought that he was pleading guilty to a Class III, not a Class I. He actually pled guilty to a Class I. And he says on page, or transcript page 32, that line 22, all right, what charge do you think you're pleading guilty to? Unlawful possession of a firearm. Unlawful possession is a Class III felony. But then he goes on to say, did you agree with Ms. Deegan to accept eight years at 85 percent, which was his actual sentence on the Class I? And he says that I felt like I didn't have a choice, but yes, I did accept it. Now, admittedly, later on, under cross-examination by the assistant state's attorney, Hamlock, he says something different. He says that he knew the agreement was eight years at 85 percent, and that he thought, he went after, did you know you were pleading guilty to aggravated discharge of a firearm in a Class I felony? He says, right. And he said, do you know I was eight years at 85 percent? And he says, right. Mr. Davis's position is confusing, but our argument is that it shows that he's at least confused. He says two different things that can't both be true. And that confusion would render his plea involuntary. And we know that the standard is ineffective assistance to counsel. The defendant would have to show and the appellant would have to show that he had prejudice and that the prejudice was caused by a performance by his trial counsel that was below an objective standard of reasonableness. We bring up the prejudice problem first. His argument is that he suffered prejudice, that he would have gone to trial on a Class I felony. The Class I was aggravated discharge of a weapon. To show that, the state would have to prove beyond reasonable doubt that he intentionally or knowingly discharged a weapon in the direction of a person. And Mr. Davis's position is that he had a defense on that charge. He mentioned at the motion to withdraw plea hearing that he provided names and numbers of possible witnesses that weren't followed up on. That's the evidence he's presented to this court as far as his defense. He alleges that he gave numbers to his trial counsel. Whether that was a defense or not is going to be up for this court to decide, but that's his position. He did at least say that he agreed to plead guilty to a Class III felony, possession of a weapon. That would be an easier case for the state to show. They would just have to show that he was a felon in possession of a weapon. The sentencing range on that was 2 to 10 years, but it is a day-for-day sentence. The sentencing range on the Class I aggravated and lawful discharge is 4 to 15 years, but it's an 85% sentence. So we would argue they suffered prejudice because he would have continued to trial. He had proper performance by his trial counsel. And that he also suffered prejudice in that on the Class I, he served another year of mandatory supervised release than he would on a Class III. And he also doesn't enjoy day-for-day credit. The most he could get is 15% credit for penalty. The first problem, which I'm actually taking second on the ineffective assistance claim, is that his attorney's trial counsel, the public defender's performance was below the subjective standard of reasonableness. We don't have examples of erroneous advice here. Our argument is that because he was confused, the performance must have been deficient. Now, there is evidence in the record that the… Isn't that just pure speculation? Well, I don't think it's speculation that he's confused, but… Well, you have to connect the two, right? We do. Admittedly, we do. And how do you do that? The fact that he was so confused on the record that he's saying two different things. Now, whether or not that's objectively unreasonable is going to be for the court to decide. Don't you have to connect something that the attorney did to bring on that confusion? That would be preferable, yes. And I would agree that we probably do. But, you know, the evidence that we have is that he's so confused. We do not have an example of erroneous advice or anything like that from the public defender. She did testify at the motion hearing that she did go visit him and she explained the offer to him. I don't know what Mr. Davis's capacity is. We're not making an argument of his capacity, but it seems that he, at least on the record, is very confused as to what his plea was and what it was for. At least as far as what the day-for-day credit situation was. And that goes to our next argument, that the trial court's admonitions were generally correct, but they were not sufficient to overcome his confusion. Now, the case we cited of Morial, there's a case where the defense attorney actually gives erroneous advice. We don't have that here. But what we do have is a confused defendant. The trial court gave the standard admonitions. But at the end of the admonition, the trial court didn't make a statement that's kind of confusing. The trial court said that this is an 85% sentence, meaning you'll initially have to serve 85% of that time. Mr. Davis's argument is that he thought he was going to get day-for-day credit, and that if the court tells him he's going to have to initially serve 85%, that kind of begs the assumption on his part that the 85% is just initially what the sentence is, that he may be eligible for day-for-day later. He's not. Initially, he has to serve 100% of the sentence. He's eligible for 15% off if he has good conduct while in the Department of Corrections. He's never going to be eligible for day-for-day credit. The last point I have is that the state's brief brings up kind of a new issue that says that the criminal history may have been incorrect at the sentencing hearing, as recited by the state. The state included criminal history during the negotiated plea hearing that did not mention a domestic battery conviction that allegedly existed out of Williamson County. The only evidence in the record at all that there's a domestic battery conviction is a motion to reduce bond that was filed by the defendant's trial counsel back at the beginning of the case. The motion to reduce bond does mention a domestic battery conviction. Our position is that there's no evidence that that domestic battery conviction exists other than that motion, and that the state is actually in a better position to know the criminal history of the defendant at the end of the case during the sentencing hearing because it's the state who has access to the NCIC, or National Criminal Information Center, database to print out the criminal history. The defense counsel isn't privy to that information except through the hands of the state in discovery. And so we think it would be in error to remand that for any sentencing hearing based on that issue because there's no evidence in the record that it is in fact an error and that's an assumption. This is, excuse me, this was a fully negotiated plea? It was, yes. Okay. Thank you. Thank you, counsel. Counsel, let me pick up the last part first. Okay. If this was a fully negotiated plea, why do you want to remand to consider elements of the defendant's criminal history? Because this court, years ago, in I believe it was Evans, has made it perfectly clear that when there's a waiver of a PSI, where there's a fully negotiated plea, there has to be a complete recitation of the defendant's criminal history. This isn't a right that belongs to the defendant or to the state, but it's for the judge's information in making a decision about whether to concur in the fully negotiated plea or not. And on evidence, just the point is that there's some indication that the criminal history that was recited for the court may have not been complete. And the people are just being forthcoming about that. It wasn't an issue raised by the defendant. But, you know, if this court finds that it's sufficiently ambiguous whether there was a complete recitation of the criminal history or not, according to this court's president, there must be a remand to make sure that the court has that complete criminal history. I believe in Evans, this court took judicial notice of the defendant's criminal history in another case that was pending before this court at the time. And this court has also taken judicial notice of criminal history that's, you know, verifiable from a public source that the defendant had a greater criminal history than the court had below. And, you know, that's up to this court's discretion whether you remand this or not. The people are just really needing to bring it to this court's attention so that everything is done properly. And it felt like we had an ethical duty to bring it to this court's attention. And that's as explained in the people's brief. And that's the point. And it's not, as this court has said in Evans, it's not something that either party can make. And so that's why we brought it up. But, you know, it's this court's discretion whether there's enough in the record to call into doubt whether the complete criminal history was brought out to the court or not. But this court's call. As to the motion to withdraw a guilty plea, the standard on review is whether the court committed an abuse of discretion in denying that motion. And in this case, there was a full hearing on it. The defendant has raised some issues that were not raised in that motion to withdraw a guilty plea. And has raised it for the first time on appeal. Those are waived. And that's, but even if not waived, they didn't have any merit. Now, below in that hearing, the defendant was not able to bring any evidence that there was any other guilty plea offer that was made by the state or communicated to him. The only thing that was communicated to the defendant, according to defense counsel Deegan, was the one that he accepted and that he pled guilty to. And that he was fully admonished about by the court before he pled guilty. And that was the plea to the aggravated discharge of a weapon, a firearm, in exchange for a sentence of eight years to 85. And she had, she said she had, she said that during negotiations she had tried to get him to make a plea offer that was more favorable, but it didn't happen. And that she promptly relayed that plea agreement to the defendant. And that he wasn't hurried at all. He had a week to consider it before he finally did plea guilty. I think she said that she delivered the plea offer to him on August 15th. And on August 22nd, 2013, he pled guilty to that. The court below had to make an issue, determine the issue of credibility. And apparently the court did not find the defendant's testimony credible and did find counsel Deegan's testimony credible. And to the extent that it looks like the defendant was confused, he was not confused, he was inconsistent. He was insisting that there was this other plea offer, but he was never able to show that there was another plea offer. But he did consistently say that Deegan came back saying that the state's attorney was offering the eight to 85. So he is consistent with Deegan in that respect that the plea offer that was made, the only plea offer that was made was that one. And he didn't feel like he had a choice, but it's not because he was being pressured into it. Deegan testified that she told him that she would certainly go to trial, but she thought he would lose, but she would do her best. What was pressing on the defendant was the fact of the weight of the evidence. The crime itself was recorded on surveillance video, and the surveillance video shows him getting out and shooting in the direction of the victim. And it shows him shooting four times, and it shows that the officers at the scene recovered four bullets, and two of which struck the impala which the victim was standing by. So the evidence against the defendant was overwhelming. He wasn't able to show any misadmonishment. He wasn't able to show that he didn't understand what he was pleading guilty to. He was not able to show that any other plea offer was made to him. He wasn't able to show any promises. In fact, on the record, he says there were no other promises made. So the court below committed no abuse of discretion in denying his motion. And unless there are any questions, we ask the court to affirm. And remand for a hearing in this court's discretion about the criminal history. Thank you, counsel. Counsel? Governor, we appreciate the briefs and arguments of counsel. We'll take this case under advisement.